198 So.2d 52 (1967)
Frederica Yvette PINKNEY, a Minor, by Thelma W. McGowan, Her Guardian of Estate and Next Friend, Appellant,
v.
Frederick PINKNEY, Appellee.
No. I-74.
District Court of Appeal of Florida. First District.
April 20, 1967.
E.K. McIlrath, Jacksonville, for appellant.
Mahon & Mahon, Jacksonville, for appellee.
SPECTOR, Judge.
This is an appeal from a final judgment for the defendant pursuant to a motion *53 for directed verdict in a wrongful death case and from an order dismissing a second count in the complaint sounding in a separate alleged tort.
The appellant by her complaint alleged herself to be the minor daughter of the appellee-defendant; that she was born out of wedlock from a union between her now deceased mother, Cleo King, and the defendant, Frederick Pinkney; that the defendant and plaintiff's mother lived together without benefit of wedlock; that she was born of such relationship; that the defendant wrongfully shot and wounded the appellant's mother, and that the mother died from the gunshot wounds wrongfully inflicted upon her by the appellee.
Out of the above described factual situation, the appellant alleged two grounds for recovery against the appellee. First, the wrongful death count and, secondly, the alleged tort based upon the "wrong" committed by the defendant for having caused or created the plaintiff to be born as an adulterine bastard and, of course, thereafter having to live under the continuing stigma of bastardy.
The trial judge granted the defendant's motion to strike the second count on the grounds that the jurisprudence of this State does not recognize liability by the father to a bastard by reason of his role as parent over and above that liability imposed by Chapter 742, Florida Statutes, F.S.A., commonly known as the bastardy statute. In dismissing the "bastardy tort" count, the trial court bottomed its ruling on Clarke v. Blackburn, 151 So.2d 325 (Fla.App.2d 1953). While the Clarke case did not involve a separate alleged tort such as that which the appellant herein wishes this court to recognize, or perhaps more accurately, to create, the Second District Court of Appeal in that case recognized that at common law a putative father was under no legal liability to support his illegitimate child; and that if liability exists, it must be that imposed by statute. The court in Clarke, at page 330, set forth the exclusivity of Chapter 742 as applied to suits of paternity and support for bastard children by pointing out that:
"Section 742.10 provides that that Chapter shall be in lieu of any other proceedings provided by law for the determination of paternity and support of bastard children. * * * Chapter 742 establishes a procedure whereby any unmarried woman who is pregnant or delivered of a bastard child may bring proceedings in the circuit court in chancery to determine the paternity of such child; and if the court shall find the defendant to be the father of the child, then the court shall order the defendant to pay monthly payments for the care and support of the child."
The appellant apparently concedes that Chapter 742, Florida Statutes, F.S.A., may very well provide the exclusive remedy for enforcing child support payments. However, the appellant insists that her claim is not one for "support." Rather, she contends that she has been wronged by the illicit conduct and relationship which the appellee carried on with her now deceased mother and demands compensation from the father for having committed those acts with plaintiff's mother which resulted in the alleged wrong upon her.
By way of analogy, appellant likens the gist of the wrong perpetrated upon her to slander by posing the question: If it be actionable to speak of one as being a bastard, how much more so is it to cause one to be a bastard? The latter "wrong" is certainly more lasting than the calumny of mere words which hopefully may soon be lost from the memory of one's contemporaries. Illegitimacy, however, is indelibly imprinted on the appellant and those in like circumstance. Unlike slander, the sting continues long after others have forgotten. It is painful enough if the child alone knows.
*54 It is interesting to note that no allegations are made against the appellant's mother whereunder she might be held to be a joint tort-feasor had she lived. For if the father's conduct be tortious, as contended by appellant, is the mother's complicity any less so? There is no suggestion in the record that the conception resulting in the appellant's being was not fully acquiesced in by the mother. Indeed, the record suggests that the appellee and the appellant's mother lived together in a state of what might be termed bigamous matrimony, though not always in bliss and harmony.
The questions inherent in appellant's contention on this point are intriguing, to be sure. However, it ignores our understanding of both the laws of men and the laws of nature that no one has an inalienable right to be born under one set of circumstances rather than another or to one pair of parents rather than another. The appellant here may well have to bear the unfair burden of illegitimacy as have many other children of shame and sorrow, but the law knows no cure for it. If for policy and social reasons compensation is to be provided to those suffering the plight of the appellant, other than for simple support as is found in Chapter 742, Florida Statutes, F.S.A., such provision must be made by the Legislature.
Appellant has not referred us to any case wherein the courts have recognized the existence of a cause of action sounding in tort arising out of acts causing one to be born in a state of illegitimacy  an action which, if it existed, might aptly be termed a "wrongful life" action. Appellant has cited an interesting Illinois case in which is posed the identical question as is here before us. See Zepeda v. Zepeda, 41 Ill. App.2d 240, 190 N.E.2d 849, cert. den. 379 U.S. 945, 85 S.Ct. 444, 13 L.Ed.2d 545. There the Illinois court concluded, as we do here, that absent express legislative authority, an action of this kind will not lie.
The remaining points urged as error by the appellant stem from the trial of the wrongful death count in the complaint.
At the end of the plaintiff's case, the trial judge granted defendant's motion for directed verdict stating as grounds for such motion that the plaintiff had failed to introduce any competent evidence based upon which the jury could legally find that the defendant was guilty of any wrongful act leading to the death of plaintiff's mother. There were no eye witnesses to the incident from which arose the mother's death. The most pertinent testimony given in this regard was the testimony of an investigating officer who was called as a witness by the plaintiff. The officer testified that the defendant had told him that while he was working at his filling station, the decedent assaulted him with a pistol, shot him three times, and in the struggle which ensued, during which he had to forceably take the pistol from her, it was discharged and she was shot, from which wound she soon died.
The acts charged to the appellee in the complaint were that he "* * * assaulted said Cleo King with a dangerous weapon, to wit, a revolver pistol, and thereafter shot and wounded Cleo King. * *" The evidence simply did not support the charge laid to the defendant. Thus, there was no evidence based upon which the case could properly have gone to the jury. The burden of proof rests with the plaintiff. Failure to carry that burden justifies, as it did here, the grant of defendant's motion for a directed verdict.
We have examined the remaining assignments of error and points arising therefrom and find them to be without substantial merit.
Affirmed.
WIGGINTON, Acting C.J., and JOHNSON, J., concur.